UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALAN J. JESTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:17-CV-137-TLS |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER OF THE ) | |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Alan J. Jester seeks review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied him Social Security Disability benefits and erred by (1) failing to demonstrate that substantial evidence supported his residual functional capacity determination, and (2) by overemphasizing the Plaintiff's ability to perform daily living activities.

**BACKGROUND**

On September 26, 2013, the Plaintiff filed his Title II application for a period of disability and disability insurance benefits, alleging disability beginning on June 29, 2013. (R. 8.) His claim was denied initially and upon reconsideration. (*Id.*) On July 17, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ). (*Id.*) Robert Barkhaus, a vocational expert, also appeared and testified at the hearing. (*Id.*) On September 1, 2015, the ALJ denied the Plaintiff's application, finding he was not disabled as of

his alleged onset date. (R. 8–18.) On October 21, 2016, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On April 6, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from his alleged onset date, June 29, 2013. (R. 8.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting his ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including recurrent arrhythmias, hypertension, obesity, and history of ischemic heart disease/cardiomyopathy. (R. 10.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic

mental and physical demands of work and that the impairments had lasted for at least twelve months as required under the statute. (R. 10–11.) The ALJ found that the Plaintiff's other alleged or diagnosed impairments, including thyroid problems, emphysema, acid reflux, vision problems, liver problems or hypokalemia, carotid stenosis, spinal problems, and anxiety and depression/mood disorders, were non-severe. (R. 11–13.) The ALJ also found that the claimant's alleged carpal tunnel syndrome was not medically determinable. (R. 12.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things he can still do physically, despite his limitations—to determine whether he can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that he had the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a):

> (lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently and, in an eight-hour period sitting for a total of 6 hours and standing/walking for a total of 6 hours) except that he is not able to climb ladders, ropes, or scaffolds at all and he can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He must also avoid unprotected heights, moving/mechanical parts, humidity, wetness, extreme cold, and extreme heat.

(R. 14–15.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of his alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. (R. 15.) But, the ALJ found that the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely credible." (*Id.*) The Plaintiff testified that "he ends up in the hospital every time he tries to work" and that "his chest hurts at a level '5' or '6' on a daily basis, with the pain lasting for 1–2 minutes." (*Id.*) He also testified that he could walk only 20 yards before becoming winded, could stand for only 15–20 minutes, and becomes "stiff" after sitting for 10–15 minutes. (*Id.*) He asserted that he could lift only a half a gallon of milk, that he becomes tired and dizzy, that he has palpitations and high blood pressure, and that "he is afraid to take a shower because he is afraid it will cause his defibrillator to shock him." (*Id.*) He also stated that "he had difficulty squatting, bending, and climbing stairs." (*Id.*)

The ALJ concluded that the Plaintiff's subjective testimony was not supported by the objective medical evidence and treatment records. (R. 16.) Nor did the ALJ find that the Plaintiff's activities of daily living supported the Plaintiff's testimony. (*Id.*) The ALJ noted that the Plaintiff was:

> able to go to the store, drive at least short distances, use a microwave, prepare simple foods, wash dishes, vacuum floors, watch television, use a computer to check Facebook, care for his personal needs independently, do his own laundry, go out alone, pay bills, count change, handle bank accounts, and stay in touch with his ex-wife.

(*Id.*) The ALJ also cited to the Plaintiff's failure to be fully compliant with his medication regimen, failure to seek medical treatment for his cardiac problems after September 2013, and failure to quit smoking despite his physicians' instructions to quit. (*Id.*)

4

The Plaintiff has past relevant work as a machinist (skilled, medium work), truck unloader (semi-skilled, heavy work), forklift driver (semi-skilled, medium work), and production supervisor (skilled, light work). (R. 16–17.) Thus, the ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (R. 17.) However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. 18.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–

400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ placed undue weight on his ability to conduct daily living activities. The Commissioner argues that the ALJ did not equate the Plaintiff's ability to perform daily activities against his ability to hold a full time job, but rather looked to the Plaintiff's ability to perform daily activities only to evaluate his credibility regarding the intensity, persistence, and limiting effects of his symptoms.

The Commissioner correctly notes that an individual's daily activities are among the factors that an ALJ must consider in making such a determination. *See Craft*, 539 F.3d at 660. "An ALJ is in the best position to determine the credibility of witnesses," and a credibility determination will be overturned "only if it is patently wrong." *Id.* at 678; *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed.") The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997). To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. "[T]he ALJ should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations.'" *Similia v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing 20 C.R.F. § 404.1529(c)(2)–(4) and *Prochaska*, 454 F.3d at 738). A credibility determination does not need to be flawless. *Id.* "[A] credibility determination will stand as long as there was some support in the record even if some of the ALJ's credibility determinations were a bit harsh." *Whetzel v. Astrue*, No. 1:07-CV-210, 2009 WL 537640, at *2 (N.D. Ind. Mar. 4, 2009) (citing *Berger*, 516 F.3d at 546).

In this case, the ALJ evaluated the Plaintiff's credibility by looking to his daily living activities, the objective medical evidence (or lack thereof), the fact that the Plaintiff has not always been fully compliant with his medication regimen, the fact that the Plaintiff has not sought medical treatment for cardiac problems since September 2013, and the fact that the Plaintiff continues to smoke despite his physicians' recommendations to the contrary.

7

There are multiple flaws with the ALJ's credibility determination. First, the ALJ failed to inquire about the reasons why the Plaintiff was not fully compliant with his medication regimen and failure to seek treatment. If an ALJ takes into consideration a claimant's failure to seek treatment in a credibility determination, the ALJ is required to inquire as to the reasons for such failure. *See Murphy v. Colvin*, 759 F.3d, 811, 816 (7th Cir. 2014) (finding fault where "the ALJ did not ask [the plaintiff] why she did not attend all of her physical therapy sessions, or why she did not comply with her home exercise program"); *Epting v. Colvin*, No. 2:14-CV-385, 2016 WL 1237888, at *8 (N.D. Ind. Mar. 29, 2016) ("When considering noncompliance with treatment . . . an ALJ is also required [to] make a determination about whether noncompliance with treatment is justified . . . ."); *Galloway v. Colvin*, No. 2:14-CV-24, 2015 WL 893172, at *5 (N.D. Ind. Mar. 3, 2015) (noting that "[h]ad the ALJ's opinion actually cited this fact as a reason for finding Plaintiff not credible, it would have been an error since he did not explore potential reasons why she wasn't treated that year" (citing *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012))); *Pitaroski v. Colvin*, No. 2:13-CV-112, 2014 WL 3687234, at *12 (N.D. Ind. July 24, 2014) (remanding because "the ALJ did not make the requisite inquiry to discover the reasons [the plaintiff] either failed to seek treatment . . . or to take his medications as prescribed"). "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference." *Shauger*, 675 F.3d at 696. This is so because "[t]here may be a reasonable explanation behind [the plaintiff's] actions, such as she may not have been able to afford the treatment, further treatment would have been ineffective, or the treatment created intolerable side effects." *Murphy*, 759 F.3d at 816. Here, the ALJ failed to inquire why

8

the Plaintiff did not pursue treatment or comply with his prescribed medical regimens, and therefore, the ALJ's negative inference was not appropriate.

The ALJ also erred by drawing a negative inference regarding the Plaintiff's credibility based on the fact that he did not stop smoking as directed by his physicians. The Seventh Circuit has made clear that this is not an appropriate consideration unless the ALJ demonstrates that there is evidence that stopping smoking would restore the claimant's impairments to a non-severe condition. *See Shramek v. Apfel*, 226 F.3d 809, 812–13 (7th Cir. 2000) (citing *Rousey v. Heckler*, 771 F.2d 1065 (7th Cir. 1985)); *see also Childress v. Colvin*, 845 F.3d 789, 793–94 (7th Cir. 2017) (finding that "there [was] no evidence of whether on balance his smoking relieved or increased [the plaintiff's] pain, or, most important, given the gravity of his medical condition, whether stopping smoking would improve his health significantly"). In this case, the ALJ did not cite any evidence that would suggest that the Plaintiff's impairments would have been restored to a non-severe condition had he stopped smoking.

The remaining bases for the ALJ's credibility determination are the Plaintiff's ability to engage in daily living activities and the lack of objective medical support for the Plaintiff's subjective complaints. Social Security "regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a bases for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). Further, the Seventh Circuit has emphasized that there are "critical differences between activities of daily living and activities in a full-time job" including flexibility in scheduling, possible help from family members, and lack of minimum performance standards; and "[t]he failure to recognize these

differences is a recurrent . . . feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Herrold v. Colvin*, No. 2:13-CV-360, 2015 WL 1243293, at *6 (N.D. Ind. Mar. 17, 2015) ("[T]he Seventh Circuit has repeatedly criticized credibility determinations that are based on a plaintiff's ability to take care of his personal hygiene, children, or household chores as these alone are not sound bases for a credibility determination.") (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)).

In this case, the ALJ failed to articulate why the Plaintiff's daily living activities were incompatible with his subjective testimony or how his daily living activities demonstrated that he could hold a full-time job. *See Pinder v. Astrue*, No. 3:09-CV-363, 2010 WL 2243248, at *5 (N.D. Ind. June 1, 2010) ("Although objective medical evidence and daily activities are appropriate factors to consider, the ALJ failed to articulate how these factors supported or contradicted any particular claims made by the Plaintiff.").

The sole remaining consideration that the ALJ used in finding the Plaintiff not credible was the lack of objective medical evidence supporting his subjective testimony. However, the Seventh Circuit, and this District, have rejected this approach. *See, e.g.*, *Villano v. Astrue*, 556, F.3d 558, 562 (7th Cir. 2009) ("[T]he ALJ may not discredit a claimant's testimony about her pain and limitations solely because there is no objective medical evidence supporting it."); *Myles v. Astrue*, 585 F.3d 672, 677 (7th Cir. 2009) (same); *Boyd v. Barnhart*, 175 F. App'x 47, 50 (7th Cir. 2006) (reversing and remanding for insufficient credibility determination where the Commissioner "defended the ALJ's decision by relying on the objective medical evidence, the testimony of the vocational expert, and a brief discussion of [the claimant's] daily living activities"); *Vercel v. Colvin*, No. 2:15-CV-81, 2016 WL 1178529, at *4 (N.D. Ind. Mar. 28,

2016) (Although the "ALJ is not required to give full credit to every statement of pain made by the claimant . . . a claimant's statements regarding symptoms or the effect of symptoms on his ability to work 'may not be disregarded solely because they are not substantiated by objective evidence.'") (quoting SSR 96-7p at *6). In fact, "the whole point of the credibility determination is to determine whether the claimant's allegations are credible *despite* the fact that they are not substantiated by the objective medical records." *Stephens v. Colvin*, No. 1:13-CV-66, 2014 WL 1047817, at *9 (N.D. Ind. Mar. 18, 2014) (emphasis in original).

Thus, the Court finds that the ALJ placed undue weight on the Plaintiff's daily living activities and other impermissible considerations in evaluating the Plaintiff's credibility, and the Court does not find sufficient explanation in the record to otherwise support the ALJ's determination. Because the Court is remanding on this issue, it need not address the remainder of the parties' arguments.

## CONCLUSION

For the reasons stated above, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on February 12, 2018.

                                       s/ Theresa L. Springmann
                                       CHIEF JUDGE THERESA L. SPRINGMANN
                                       UNITED STATES DISTRICT COURT